IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JESSICA L. COOPER,

                                        Plaintiff,

        v.                                                      Civil Action No. 3:11-CV-712

ANTHONY A. LIPPA, JR. *et al.*,

                                        Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Amended Motion for Summary Judgment ("Motion" or "Motion for Summary Judgment") (ECF No. 48) filed by Defendants Anthony A. Lippa, Warner D. Lipscomb, and Marshall M. Ellett[1] (collectively "Defendants"). Each of the Defendants works for the Caroline County Sheriff's Office. Lippa is the Sheriff and Lipscomb and Ellett are Sheriff's Deputies, employed by Lippa. The case involves 42 U.S.C. § 1983 and Virginia malicious prosecution claims, alleging the Defendants pursued criminal prosecution against Plaintiff Jessica L. Cooper without probable cause. The Court held a hearing in on the Motion on August 5, 2013. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion. Specifically, the Court grants summary judgment in favor of Lipscomb and denies summary judgment in favor of Ellett and Lippa.

## BACKGROUND

Except as identified, the following facts are undisputed. Plaintiff avers that she had a relationship with Deputy Patrick Blasiol, a Sheriff's Deputy in the Caroline County Sheriff's Office, which ended in mid-2008. Cooper Dec. ¶ 2, Jan. 13, 2013. As a result of the breakup, Cooper states Blasiol was upset and threatened that he and other officers in the Caroline County

---

[1] In this case, Plaintiff also sues Patrick H. Blasiol and Fonda L. Brennan. On Defendants' Motion to Dismiss, however, the Court dismissed all claims based on actions committed by Blasiol and Brennan as barred by the statute of limitations. *See* Mem. Op., Apr. 23, 2012, ECF No. 14. As a result, all remaining defendants join in the Motion for Summary Judgment.

Sheriff's Office would use their power to harass her and file criminal charges against her. Cooper Dec. ¶ 3. Subsequently, Blasiol and other Caroline County Sheriff's Deputies sat in their patrol cars in her driveway and pulled her over while she was driving. Cooper Dec. ¶¶ 4-5. Cooper subsequently reported Blasiol's threats and the conduct of the Blasiol and other deputies to Lieutenant Beasley of the Caroline County Sheriff's Office, Lippa, and Commonwealth's Attorney Tony Spencer.[2] Cooper Dec. ¶¶ 6-11.

After meeting with Cooper regarding Blasiol's threats and other officers' harassment, Spencer dismissed some of the charges against Cooper. *See* Spencer Dep. 28:4-29:4, Oct. 25, 2012. Lippa then made statements that he believed Cooper and Spencer were involved in a sexual relationship. Lippa Dep. 22:2-8, Oct. 25, 2012; Lipscomb Dep. 31:25, Oct. 25, 2012. Lippa also made statements that officers in the Sheriff's Office should charge Cooper to see what Spencer would do. Fedder Dep. 30:23-31:13, Nov. 5, 2012. These statements gave at least one officer the impression that Lippa did not care whether or not there was a basis for the charge against Cooper. *See* Fedder Dep. 31:10-13.[3]

In 2009, Caroline County Sheriff's Deputies served Cooper with summonses or arrested her with summonses for eleven offenses. Cooper Dec. ¶ 14. All but two of those charges were nolle prossed or dismissed with prejudice in 2009 and 2010. Cooper Dec. ¶ 15. Two charges from 2009 are the subject of this action. One charge was a charge forgery and uttering, based on Cooper allegedly taking a check from Brian Pitts, forging the check, making it payable to herself

---

[2] Cooper testified that she went to Lieutenant Beasley, who told her to speak to Lippa. Cooper Dec. ¶¶ 6-7. She spoke with Lippa and played a recording for him of Blasiol threatening to charge her with crimes regardless of her guilt and told him about Blasiol sitting in her driveway and the traffic stops conducted by other deputies. Cooper Dec. ¶ 8. In January of 2009, Cooper went to Spencer about the threats from Blasiol and the other deputies' traffic stops. Cooper Dec. ¶ 10. She played for him the recording of Blasiol threatening her. Cooper Dec. ¶ 11. Cooper alleges that "[s]ortly after [she] had talked with Sheriff Lippa and CA Spencer, [she] started getting charged in January 2009 with traffic offenses [she] did not commit." Cooper Dec. ¶ 12.

[3] Defendants did not respond to the facts set forth in first two paragraphs of the Background section, either to agree with or dispute the facts, presumably because they deem these facts immaterial to the actual issues of the case. They are included here to provide the full context within which the central issues of the case occurred.

in the amount of $800, and cashing the check.[4] Lipscomb investigated this charge and obtained an arrest warrant for Cooper. The other charge was a charge for attempted malicious wounding, resulting from an altercation between Cooper, Pitts, and a woman named Abranda Walker. Ellett, and other officers, investigated this charge and Ellett obtained an arrest warrant for Cooper.

### A. Forgery and Uttering Charges Against Cooper

On August 8, 2009, Brian Pitts called the Caroline County Sheriff's Office to report that Cooper took money out of his checking account. Cooper Dec. ¶ 17; Defs.' M. Summ. J. [hereinafter MSJ] Ex. 1, Incident Call Report. Deputy Lipscomb testified that he responded to Pitts's call because it was assigned to his area and he was dispatched to Pitts's mother's house. Lipscomb Dep. 12:4-10, 13:8. Lipscomb testified that he told Pitts that Pitts needed to obtain documentation from the bank regarding the checks he alleged Cooper forged. Lipscomb Dep. 12:13-15. Cooper disputes that Lipscomb went to Pitts's mother's house on August 8, 2009 because Cooper can find no documents indicating Lipscomb met with Pitts on August 8th and asserts that the call on August 8th could not have been about money being taken from his account because the disputed check (Check #094) was not presented for cashing at the bank until August 10, 2009.[5] Pls.' Mem. in Opp'n to Defs.' M. Summ. J. 6 [hereinafter Opposition], Ex. 16, Check #094. On October 17, 2009, Pitts contacted Lipscomb, made a written statement regarding the forgery, and provided copies of documents relating to his account and the canceled check. MSJ Ex. 3, Caroline County Sheriff's Office Report & Pitts's Written Statement. Plaintiff does not dispute that Pitts contacted Lipscomb on October 17, 2009, but does dispute any implication that Lipscomb had not spoken with Pitts between August 8, 2009 and October 17, 2009. Opposition 6. Plaintiff provided a DVD and transcript of a recorded conversation occurring between Lipscomb and Pitts on October 14, 2009 when Lipscomb served an

---

[4] Cooper asserts Pitts wrote her the check for money he owed her. Cooper Dec. ¶ 16.
[5] Defendants counter that August 8, 2009 was a Saturday and common practice of banks is to conduct Saturday business on the next business day, in this case August 10, 2009.

"annoying phone calls warrant" on Pitts. Opposition Exs. 3, 7. During that conversation, Plaintiff asserts that Lipscomb initiated a conversation about the alleged check forgery and uttering and encouraged Pitts to bring charges against Cooper. Opposition Exs. 7, 8.

Lipscomb testified that, on October 17, 2009, he considered Pitts to be a reliable informant.[6] At that time, Lipscomb went to a Magistrate with oral and written statements from Pitts and copies of a canceled check made out to Jessica Cooper for the amount Pitts claimed was taken from his account. Lipscomb Dep. 42:15-43:2. Cooper asserts that Defendants' statements as to what information Lipscomb had at the time he went to the magistrate are materially false because Lipscomb actually had evidence that disproved the felony charges (based on the date the check was cashed). Cooper further asserts that Lipscomb failed to inform the magistrate he "had encouraged, solicited, and caused Pitts to make false allegations against Cooper," did not obtain a handwriting analysis on the check, and made no effort to interview Cooper. Opposition 7 (citing Opposition Exs. 6, 7, 8, Lipscomb Dep. 22:7-27:10). Ultimately, the forgery and uttering charges against Cooper were nolle prossed and Lipscomb testified that at no time did any member of the Commonwealth's Attorney's Office discuss the charges with Lipscomb or inform him that the charges were being dismissed. Lipscomb Dep. 39:9-40:22.

### B. Attempted Malicious Wounding Charge Against Cooper

On June 5, 2010, officers responded to 911 calls originating from 7181 Ladysmith Road. *See* Ellett Dep. 16:6-19, Nov. 5, 2009. On July 7, 2010, Deputy Ellett was assigned to investigate a potential malicious wounding allegedly committed against Walker by Cooper during the June 5th incident.[7] Ellett Dep. 19:2-5. The allegations giving rise to the attempted malicious wounding charge include various descriptions of Cooper swinging a hatchet toward Walker. *See*

---

[6] Plaintiff does not dispute that Lipscomb made this statement, but asserts that a more accurate statement based on the evidence is that Lipscomb felt that Pitts was a compliant and suggestible informant.

[7] Citing Lippa's affidavit, Defendant's assert that Ellett was assigned to investigate the incident sometime in June. MSJ 3. In his deposition, however, Ellett states that he was not assigned to the incident until July 7, 2010. Ellett Dep. 19:2-5. Viewing the facts in the light most favorable to Cooper, the Court must assume Ellett was assigned to the case on July 7, 2010, the day the indictment was issued against Cooper for attempted malicious wounding.

Opposition Ex. 10, Ellett Investigation Notes [hereinafter Investigation Notes]. Ellett testified he did not find the hatchet involved in the incident, but "99 percent of the time in any crime [law enforcement] doesn't recover the weapon" and he had seen the hatchet previously at Cooper's residence.[8] Ellett Dep. 27:20-28:18. Defendants submit that during Ellett's investigation, Walker told Ellett that Cooper had swung a hatchet at Walker's head and Pitts and Pitts's mother, Tina Taylor, gave statements corroborating Walker's statement. Ellett Dep. 31:18-32:20. Cooper disputes these assertions, arguing that Ellett did not conduct any witness interviews prior to obtaining an indictment on July 7, 2010, that Walker never gave a coherent or internally consist story including Cooper swinging the hatchet, that Pitts's statements did not actually corroborate Walker's, and that Ellett did not speak with Taylor until after Cooper's arrest. Ellett Dep. 32:5-9; Opposition Ex. 11; Attempted Malicious Wounding Trial Tr. 65-66, Dec. 1, 2010 [hereinafter Trial Tr.].

Defendants also assert that Lippa had no knowledge of Ellett's investigation and ultimate conclusions, nor did Lippa direct or instruct Ellett to seek an indictment of Cooper with the grand jury. Lippa Aff. ¶¶ 3-4. Cooper disputes the assertion that Lippa had no knowledge of the investigation because Lippa was Ellett's supervisor and was privy to all information relating to Ellett's investigations due to Lippa's instructions that he wanted to be kept apprised of all matters involving Cooper. Lipscomb Dep. 5:15-19. Cooper further asserts Lippa was involved in the charging decision because he had established a policy and practice of encouraging officers to initiate criminal charges against Cooper[9] after Spencer had dismissed prior charges against Cooper and Lippa indicated he believed Cooper and Spencer were involved in a sexual relationship. *See* Lipscomb Dep. 33:12-34:10.

---

[8] Cooper argues Ellett's statements regarding the hatchet are irrelevant. Cooper further argues the statement that Ellett had previously seen the hatchet at Cooper's residence would be inadmissible at trial and could not be true because Deputy Eichenmiller, one of the officers responding to the scene on June 5, 2010, testified that he did not believe the hatchet was on the scene on June 5, 2010; and therefore, Ellett could not have seen the hatchet. Opposition, Ex. 21, Eichenmiller Dep., 18: 1-3, Mar. 26, 2013.

[9] Cooper does not cite to evidence supporting her assertion that Lippa established a policy and practice of encouraging officers to initiate criminal proceedings against Cooper. *See* Opposition 11.

After his assignment to the case, Ellett took his information regarding the incident on June 5, 2010 to Commonwealth's Attorney Glen Hinkle, who presented the information to a grand jury, which issued an indictment against Cooper for attempted malicious wounding. *See* Spencer Dep. 108:21-109:15. Defendants assert that Spencer does not believe Lippa had any involvement in the grand jury process and "agreed" that in July 2010, Ellett, the Commonwealth's Attorney, and ultimately the grand jury found that there was probable cause to arrest Cooper for attempted malicious wounding. Spencer Dep. 108:4-109:23. Cooper does not dispute that Spencer made these statements, though she does point out that Spencer had no direct involvement in the probable cause determination for the attempted malicious wounding charge and argues the statements are not material facts.

On July 27, 2010, Pitts appeared at a hearing before the Caroline County Juvenile and Domestic Relations Court on the annoying phone calls charge, Pitts testified that he was assaulted by Walker, not Cooper, on June 5, 2010. McCarty Dep. 14:4-10, Mar. 26, 2013. After Pitts gave his testimony, Sergeants Eichenmiller and McCarty arrested Pitts and filed charges against him for providing false information to a criminal investigator. Pitts was eventually found guilty of that charge in the Caroline County General District Court and withdrew his subsequent appeal to the Caroline County Circuit Court. MSJ Exs. 7-8. Pitts's recantation of his statement against Cooper occurred twenty days after the grand jury indicted Cooper for attempted malicious wounding.

On December 1, 2010, the Caroline County Circuit Court held a trial on Cooper's attempted malicious wounding charge. Trial Tr. 1. At the trial, Walker testified that on June 5, 2010, Cooper arrived in the driveway of a house belonging to T. Reynolds and "exited her vehicle with a hatchet in her hand and said [to Walker] if you want to run your mouth on the phone I am now standing right here." *Id.* at 10:14-16. Walker also testified that Cooper was holding the hatchet in mid-air and that, at that time, Pitts tackled Cooper. *Id.* at 10, 12. At the trial, Taylor testified that Cooper "pulled up in the Jeep. She just get [sic.] out with the hatchet after

6

[Walker]." *Id.* at 45. At the close of the Commonwealth's evidence, Cooper's defense counsel moved to strike, arguing that the Commonwealth's witnesses' credibility was insufficient. *Id.* at 76-77. The judge denied the motion. *Id.* at 76-77. Defense counsel renewed the motion to strike and the judge did not grant the motion. *Id.* at 114. At the close of trial, the judge acquitted Cooper of attempted malicious wounding, stating:

> I am absolutely certain in this case that I have been lied to more than once. I am certain of that. I am not only certain of it beyond a reasonable doubt and to a moral certainty, the highest standard known in law. The Court's problem is I can't tell who it is. That being the case, I find you not guilty.

*Id.* at 123.

On October 24, 2011, Cooper filed the instant suit, alleging various state law and constitutional violations committed by numerous officers and Sheriff Lippa. The Court dismissed a number of these claims on April 23, 2012, *See* Mem. Op., Apr. 23, 2012, ECF No. 14, and Cooper added Ellett as a defendant by filing suit against him on November 13, 2012. The remaining Defendants now move for summary judgment, arguing that the evidence adduced during discovery shows the Defendants are not liable under either § 1983 or Virginia law. Cooper responded in opposition, Defendants filed a reply, and the Court heard oral arguments on the Motion for Summary Judgment on August 5, 2013. Accordingly, the matter is now ripe for decision.

## LEGAL STANDARD

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If there is no genuine dispute as to any material fact, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). However, if the court

finds that there is a genuine issue of material fact, the motion must be denied. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2011).

A court must look to the specific facts pled to determine whether a triable issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996). The moving party bears the burden of establishing the nonexistence of a triable issue of fact by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325 (internal quotation marks omitted). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Anderson*, 477 U.S. at 252.

A district court must "resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Thus, if the nonmoving party's evidence is only colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

## DISCUSSION

1. **Fourth Amendment Claims Against Deputy Lipscomb and Deputy Ellett**

    a. *Applicable Law*

Though, "it is not entirely clear whether [there is] a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure." *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009). The Fourth Circuit has stated that federal malicious prosecution claim, though inartfully termed, is "a claim founded on a

Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution – specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (citing *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)). In *Snider*, the Fourth Circuit suggested that the elements of the federal analogue of a state malicious prosecution claim are: (1) an unreasonable seizure; and (2) "a favorable termination of the criminal proceeding flowing from the seizure." *Snider*, 584 F.3d at 199.

The "seizure of an individual effected without probable cause is unreasonable." *Brooks*, 85 F.3d at 183 (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). "An officer has probable cause for arrest when the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (first omission in original) (quoting *Wilson v. Kittoe*, 337 F.3d 395, 398 (4th Cir. 2003)). When "determining whether probable cause exists in a given case, it is important to limit our consideration only to those facts and circumstances known to the officer at the time of the arrest." *Wilson*, 337 F.3d at 398 (internal quotation marks omitted) (quoting *Smith v. Tolley*, 960 F. Supp. 977, 994 (E.D. Va. 1997)). Notwithstanding that "malice is required to state a claim for malicious prosecution at common law, the reasonableness of a seizure under the Fourth Amendment should be analyzed objectively." *Id.* at 514 n.5 (citing *Brooks*, 85 F.3d at 184 n.5). Thus, "the subjective state of mind of the defendant, whether good faith or ill will, is irrelevant in this context." *Brooks*, 85 F.3d at 184 n.5.

The favorable termination "element is satisfied where a prior criminal case against the plaintiff has been disposed of in a way that indicates the plaintiff[']s innocence." *Snider*, 584 F.3d at 202 (Stamp, J. concurring) (citing *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997) ("Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence

of the accused.")). The requirement of a "favorable termination works to ensure against inconsistent judgment and to avoid parallel litigation on issues of probable cause." *Id.*

> b. *Deputy Lipscomb – Forgery and Uttering Charges*

The parties do not dispute that there was a favorable termination of the criminal proceedings regarding the forgery and uttering charges;[10] therefore the question becomes solely whether the undisputed evidence proves the arrest of Cooper was not unreasonable. In other words, if the evidence proves as a matter of law that Lipscomb had probable cause for arrest based on his knowledge at the time he sought indictment and arrested Cooper, the Court must grant summary judgment in favor of Lipscomb. *See Wilson*, 337 F.3d at 398. Despite a finding of probable cause by a magistrate in issuing an arrest warrant, an officer violates the Fourth Amendment if he or she "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from the affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007) (internal citations and quotation marks omitted). A plaintiff can establish "reckless disregard" when the "officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reason to doubt the accuracy of the information he reported." *Id.* (internal quotation marks omitted) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). An omission can show reckless disregard where "a police officer failed to inform the judicial officer of facts [he] knew would negate probable cause." *Id.* (internal quotation marks omitted) (quoting *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003)).

At the time Lipscomb sought to obtain an indictment against Cooper, he had (1) Pitts's oral statement from August 8, 2009, reporting that Cooper fraudulently took money from his

---

[10] The Court previously held that termination of the forgery and uttering charges against Cooper by *nolle prosequi* is a favorable termination as required to maintain a malicious prosecution action. Mem. Op. 7, ECF No. 14.

checking account; (2) the information in Lipscomb's own written report dated October 17, 2009, indicating he obtained a copy of Check #094, which Pitts advised him was taken, forged, and cashed by Cooper; (3) Pitts's written statement, indicating that on July 29, 2009, "Cooper called [him] and said that she had written a check and signed [his] name for $800.00. [He] hung up and called the bank and [his] account was $800 short," MSJ Ex. 3; (4) a copy of Check #094, dated July 29, 2009, and marked as cashed at branch #02 on August 10, 2009 at 09:00; (5) the knowledge that he met with Pitts on October 14, 2009 and brought up the subject of the check, stating "I was willing to go ahead and pursue the charges . . . I'm here offering you tonight a [legal?] settlement, alright? I'm here tonight to tell you that I would do anything I could, that I would do anything I can, to help you," Opposition Exs. 7, 8; (6) the knowledge that he had not interviewed Cooper or had handwriting analysis conducted on the check; and (7) according to Pitts, knowledge that sometime in October, Lipscomb had told Pitts not to worry about DUI charges pending against Pitts because Lipscomb was the only one who saw anything, Opposition, Ex. 6, Pitts November Statement, Nov. 11, 2009 [hereinafter Pitts November Statement].

The first consideration must be whether the date the bank stamped as the date it cashed Check #094, August 10, 2009, defeats a finding of probable cause. The Court finds it does not. A possible inference from the August 10, 2009 date stamp is that Cooper actually went to the bank to cash Check #094 on Monday, August 10, 2009. This would indicate the Pitt's August 8, 2009 call to the Caroline County Sheriff's Office was either regarding another check or was a lie that quickly came true on Monday, August 10th. Either way, if Cooper actually cashed the check on August 10, 2009, it would call the credibility of Pitt's August 8, 2009 statement into question. The actual question, however, is not what really happened, but what Lipscomb reasonably believed happened at the time he sought the indictment. At the time Lipscomb sought an indictment for forgery and uttering, Lipscomb had a copy of a check that an informant told him had been stolen and forged by Cooper. He also knew that Pitts had gone to the bank to fill out

paperwork regarding the forgery. Opposition Ex. 8, at 6. Lipscomb testified that on October 17, 2009, he considered Pitts to be a reliable informant.[11] Under these circumstances, Lipscomb could have reconciled the date discrepancies by assuming Cooper cashed Check #094 on Saturday, August 8, 2009 and was processed by the bank on August 10, 2009.

Similarly, probable cause is not defeated by the written statement from October 17, 2009 where Pitts stated that on July 29th, Cooper called him and told him she had written a check on his account for $800. The statement goes on to say that Pitts "hung up and called the bank." The rational inference from this statement is that Pitts called his bank on July 29th and found out his account was $800 short. This could not be true based on the fact that the check was not cashed until either August 8th or 10th. However, under the circumstances, it would be reasonable for Lipscomb to conclude that Pitts confused the date when making his written statement because the check shows it was written on July 29, 2009, even though it was not cashed until August 8th or 10th.[12]

The fact that Lipscomb encouraged Pitts to file charges against Cooper does not negate a finding of probable cause. The recording and transcript of the conversation between Lipscomb and Pitts on October 14, 2009 reveals that Lipscomb brought up the potential forgery and uttering charges and then told Pitts that he was willing to go forward with charges against Cooper and to help Pitts in any way he could. Opposition Exs. 7-8. Lipscomb asked about the check and Pitts stated he had going to the bank to file the paperwork regarding the forgery. *Id.* At no point during the conversation did Lipscomb encourage Pitts to fabricate charges or

---

[11] Cooper disputes Lipscomb's statement, asserting that based on Lipscomb's encouragement that Pitts file charges against Cooper for forging the check, "the more accurate statement based on the evidence is that Deputy Lipscomb felt that Pitts was a compliant and suggestible informant." *See* Opposition Exs. 6, 7, 8. As discussed below, Lipscomb's encouragement does not negate Pitts's credibility with regard whether or not Cooper actually forged the check.

[12] Cooper also challenges Lipscomb's reliance on Pitts's statements because Lipscomb's notes state Pitts reported on August 8, 2009 that a "starter check" was stolen. Cooper contends that Check #094 was not a starter check. If the check in fact was not a starter check, this minor inconsistency is not sufficient to negate other indicators of probable cause. Further, because check numbers lower than 100 are typically starter checks, it would be reasonable for Lipscomb to find there was no inconsistency based on Pitts's statement that a starter check was taken.

evidence against Cooper; he merely offered to do what he could to help Pitts and indicated his willingness to pursue charges. *Id.* The conversation also reveals that Pitts, himself, obtained the evidence required to press charges against Cooper. *Id.* Further, Cooper's own evidence does not clearly indicate Lipscomb offered to help Pitts with his DUI charges in exchange for pressing charges against Cooper; Pitts's November written statement merely says that during a conversation about bringing charges against Cooper, Lipscomb told Pitts "not to worry about it [Lipscomb] could help [Pitts] with the charge because he was the only one who saw anything." Opposition, Ex. 6. Pitts did not indicate that Lipscomb's statement was an offer contingent upon Pitts pressing charges against Cooper or that Pitts interpreted it as such. Lipscomb's encouragement to press charges, therefore, does not negate a finding that Lipscomb reasonably believed that Cooper had committed forgery and uttering.

Neither does the fact that, on November 11, 2009, Pitts drafted a written statement where he says he fabricated the forgery charge against Cooper because he was mad negate a finding of probable cause. Cooper presents no evidence that Lipscomb knew Pitts fabricated the forgery charges at the time he sought an indictment against Cooper. Pitts's later recantation of his statements therefore does not refute Lipscomb's belief on October 17, 2009 that Pitts was a reliable informant or Lipscomb's belief that he had probable cause to seek an indictment against Cooper.

Finally, Cooper's argument that Lipscomb's failure to have a handwriting analysis completed on Check #094 and interview Cooper prior to an indictment indicates a lack of probable cause also fails. Cooper points to no legal requirement to have a handwriting analysis completed or to interview the suspect prior to seeking an indictment. The evidence also shows that Lipscomb had copies of multiple checks from Pitts's account and the account opening documents, showing Pitts's actual signature. MSJ Ex. 3. This would have allowed Lipscomb to do his own evaluation of the signature of Check #094. Additionally, Cooper does not provide any

13

evidence of what she would have said at an interview with Lipscomb that would have caused him to question his belief that she committed forgery and uttering.

The information possessed by Lipscomb when he sought indictment was sufficient to create probable cause that Cooper committed forgery and uttering. Further, nothing indicates that evidence not submitted to the magistrate judge "would negate probable cause." *Miller*, 475 F.3d at 627. The Court therefore finds that Lipscomb had probable cause to seek indictment as a matter of law. Finding there was no constitutional violation, there can also be no supervisory liability assessed against Lippa with respect to the forgery and uttering charge. Summary judgment on Cooper's § 1983 forgery and uttering claims is therefore GRANTED in favor of Lipscomb and Lippa.

> c. *Deputy Ellett – Attempted Malicious Wounding Charge*

The parties again do not dispute that there was a favorable termination of the criminal proceedings regarding the attempted malicious wounding charge; therefore the question becomes solely whether the undisputed evidence proves the arrest of Cooper was not unreasonable. The first consideration in the probable cause determination for attempted malicious wounding must be what effect, if any, did the grand jury's indictment have.

The Fourth Circuit has recognized that "[i]t has long since been settled by the Supreme Court that an indictment, fair upon its face, returned by a properly constituted grand jury conclusively determines the existence of probable cause." *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (internal quotation marks omitted) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975); *Costello v. United States*, 350 U.S. 359, 363 (1956)). A grand jury's indictment will not, however, "shield a police officer who has deliberately supplied misleading information that influenced the decision." *Id.* The Court must therefore consider what Ellett knew and presented to the grand jury in seeking an indictment against Cooper for attempted malicious wounding.

Based on the record presented on summary judgment, it is unclear how much investigation Ellett conducted prior to seeking the indictment from the grand jury. What is clear

is that Ellett was assigned to the attempted malicious wounding case on July 7, 2010, which is the same date he sought the indictment and over one month after the June 5, 2010 incident. It is also clear that when he sought the indictment, Ellett had a statement from Walker, though it is not clear whether he had personally interviewed her or merely reviewed her prior statements. *See* Investigation Notes 36 (providing Ellett's investigation note stating "WALKER signed a written statement regarding her complaint and the facts attested to by WALKER were presented to the GRAND JURY of Caroline County on July 7th, 2010.").

It is further unclear whether Ellett interviewed any other witnesses prior to seeking indictment from the grand jury. Ellett testified that at the time he made the probable cause determination he had "interviewed Ms. Taylor and Mr. Pitts, who corroborated Ms. Walker's statements." Ellett Dep. 31:11-17. Cooper, however, contends that Ellett had not spoken with Taylor or Pitts prior to seeking indictment. At the trial for the attempted malicious wounding charge, Ellett testified that he spoke with Taylor on four occasions, "two on the day of Cooper's arrest and two occasions after that." Trial Tr. 65-66. Because Cooper was arrested on July 14, 2010, seven days after the indictment was issued against her, Cooper argues Ellett could not have spoken with Taylor prior to seeking the indictment. Cooper also asserts that Ellett's investigation notes indicate he did not speak with Pitts until the day after Cooper's arrest, on July 15, 2010. Investigation Notes 42. A review of Ellett's investigation notes reveals a summary of what various witnesses stated unaccompanied by the dates they provided those statements; it is therefore unclear whether Ellett spoke with Pitts on a date other than July 15, 2010. *See generally*, Investigation Notes. In the light most favorable to Cooper, the Court must assume Ellett had not interviewed Taylor or Pitts prior to seeking the indictment.

The determination that Ellett did not interview Taylor or Pitts prior to seeking an indictment gives rise to a reasonable inference that Ellett went to the grand jury with only Walker's statement, likely the notes of the officers who responded to the scene on June 5, 2010, and Ellett's belief that it is not uncommon for officers not to recover a weapon from the scene of

an alleged crime. The question therefore becomes whether Ellett's presentation of that limited amount of evidence "deliberately supplied misleading information that influenced the [grand jury's] decision. *Durham*, 690 F.3d at 189.

This determination is made impossible by the fact that the record does not include the Walker's written statement that was presented to the grand jury. The statement was never provided in discovery and Cooper "can only understand that it no longer exists." Opposition 20. Cooper's argument is that Ellett failed to provide the grand jury with (1) Taylor and Pitt's statements, (2) information about the 911 calls relating to the June 5th incident, (3) a diagram of the property, and (4) information that could have been obtained from interviewing the officers who investigated on June 5, 2010. To determine whether failure to collect and provide the grand jury with this information was deliberately misleading would require a comparison of Walker's written statement to the other information that could have been provided. If the information that could have been provided was consistent with Walker's statement, the information Ellett provided to the grand jury would not have been misleading. However, this is impossible to determine as a matter of law without knowing what Walker's statement said. Ellett's investigation notes provide summaries of what Walker stated on various occasions, but that does not provide a definitive indication of what information Ellett actually provided to the grand jury. Genuine issues of material fact therefore exist regarding Ellett's conduct in investigating and prosecuting the attempted malicious wounding charge and Ellett is not entitled to summary judgment based on his argument that probable cause supported Cooper's indictment and arrest.

2. **Fourth Amendment Claims Against Sheriff Lippa**

Finding the Court cannot determine as a matter of law that Cooper's arrest for attempted malicious wounding was not unreasonable, the Court must next consider whether Lippa can be held responsible for Ellett's actions. "*Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To hold a supervisor liable for the actions of his subordinates under § 1983, a plaintiff must prove the execution of a policy

or custom resulted in the injury. *Id.* (citing *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)). The first inquiry "is the question whether there is a direct causal link between a [supervisor's] policy or custom and the alleged constitutional deprivation." *Id.* A supervisor "can be liable under § 1983 only where its policies are the moving force behind the constitutional violation." *Id.* at 388 (citing *Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 695 (1978); *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)).

If Ellett executed an unreasonable seizure on Cooper, Lippa may also be liable as his supervisor if a policy he put into place was the moving force behind Ellett's actions. *See City of Canton*, 489 U.S. at 388. Cooper asserts the Lippa had in place a policy of encouraging officers to bring charges against Cooper, even when the charges had no merit. In support, Cooper provides the testimony of one officer, Fedder, who stated that Lippa "would say charge [Cooper] and see what Tony Spencer does. Have her charged and see what Tony Spencer does or reacts or something to that context." Fedder Dep. 30:23-31:1. When asked if Fedder thought Lippa cared whether or not there was probable cause, Fedder responded "I want to say, no. See I can't remember the exact way he would say it but he let it be well known in the office that he didn't care for her one bit, and I guess it just - - trickled down to the deputies." Fedder Dep. 31:2-9. Cooper also asserts that Lippa had a policy that his deputies were to keep him apprised of their interactions with Cooper. *See* Ellett Dep. 41:16-24. Finally, Cooper asserts that Lippa made a number of statements to his deputies that he believed Cooper and Spencer were involved in a sexual relationship and specifically accused Spencer of such a relationship in a letter written to Spencer on October 12, 2009. *See, e.g.*, Lipscomb Dep. 31:25-34:18; Fedder Dep. 29:12-32:1; Eichenmiller Dep. 7:7-8:3, Mar. 26, 2013; Opposition Ex. 20, Lippa Letter to Spencer.

Contrary to the Defendants' assertion of Lippa's lack of involvement in Ellett's investigation, Cooper has submitted some evidence that there was policy of charging Cooper, perhaps even without probable cause, to see what Spencer would do in response. Fedder Dep. 30:23-31:1. This evidence may not be credible or sufficient to carry a plaintiff's burden at trial;

however, the evidence presented by Cooper creates a genuine dispute of material fact regarding whether Lippa created a custom or policy to charge Cooper. It is not clear as a matter of law that the policy could not have been the impetus for Ellett's potentially unconstitutional seizure. Summary judgment is therefore inappropriate with regard to Lippa's liability for Ellett's alleged Fourth Amendment violations.

### 3. **Qualified Immunity for Fourth Amendment Claims**

Defendants contend that even if the Court finds there was not probable cause to support the seizures, they are entitled to qualified immunity. Qualified immunity protects government officials from civil lawsuits when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This protection is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). A determination of a defendant is entitled to "qualified immunity involves a two-step procedure that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Gregg v. Ham*, 678 F.3d 333, 338-39 (4th Cir. 2012) (internal quotation marks omitted) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

For a right to be clearly established, it "must be sufficiently clear that every reasonably officer would have [have understood] that what he is doing violated that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)). The "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083. To prove defendants are not entitled to qualified immunity, a plaintiff can "point either to cases of controlling authority in their jurisdiction at the

time of the incident or to a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Id.* at 2086 (internal quotation marks omitted) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

Summary judgment in favor of Ellett or Lippa based on qualified immunity is not appropriate. With respect to Ellett, the law is clearly established that he could not deliberately submit misleading information to the grand jury. *Durham*, 690 F.3d at 189. As discussed above, without Walker's written statement that Ellett brought to the grand jury, it cannot be determined whether Ellett submitted misleading information.     With respect to Lippa, it is clearly established that, as the supervisor of Ellett, he could not create a custom or policy that was likely to lead to constitutional violations, specifically, arrests without probable cause. *City of Canton*, 489 U.S. at 385. As noted above, there is some evidence that Lippa created a policy that officers charge Cooper, with or without probable cause, in order to see what Spencer would do. Such a policy would surely violate clearly established law. Summary judgment in favor of Ellett and Lippa with regard to Cooper's § 1983 claims must therefore be denied.

### 4. **State Law Claims**

To prove malicious prosecution under Virginia law, a "plaintiff must prove four elements: that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis v. Kei*, 708 S.E.2d 884, 889 (Va. 2011) (citing *O'Connor v. Tice*, 704 S.E.2d 572, 575 (2011); *Baker v. Elmendorf*, 628 S.E.2d 358, 359 (2006)). "Malicious prosecution actions arising from criminal proceedings are not favored in Virginia and the requirements for maintaining such actions are more stringent than those applied to other tort cases." *O'Connor*, 704 S.E.2d at 575.

"Malice may be inferred from a lack of probable cause, but a lack of probable cause may not be inferred from malice." *Reilly v. Shepherd*, 643 S.E.2d 216, 219 (Va. 2007). Malice is defined in this context "as any controlling motive other than a good faith desire to further the

ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Hudson v. Lanier*, 497 S.E.2d 471, 473 (Va. 1998). In the malicious prosecution context, "probable cause is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which [she] is suspected." *O'Connor*, 704 S.E.2d at 576. "Whether probable cause existed is determined at the time the defendant took the action initiating the criminal charges." *Id.* If the facts pertaining to "probable cause are in dispute, the issue is one of fact to be resolved by the trier of fact." *Id.*

Under the doctrine of *respondeat superior*, recognized in Virginia, "an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed." *Plummer v. Ctnr. Psychiatrists, Ltd.*, 476 S.E.2d 172, 174 (Va. 1996).

The parties correctly note that the analysis of the state law malicious prosecution claims is essentially the same as the § 1983 analysis. The main difference is that a Virginia malicious prosecution claim requires a showing of malice. However, malice can be inferred from a lack of probable cause. The analysis of whether summary judgment in favor of the Defendants on the state law claims therefore hinges on the determination of whether Lipscomb and Ellett had probable cause when initiating charges against Cooper. For the reasons stated above, the Court finds granting summary judgment in favor of Lipscomb on Cooper's state law claims is appropriate; however, summary judgment in favor of Ellett is inappropriate.

The parties do not dispute that Lipscomb and Ellett were acting pursuant to their employment with the Caroline County Sheriff's Office, under the supervisions of Lippa. *See* MSJ 1. Accordingly, if Ellett acted without probable cause, Lippa could be held liable under the doctrine of *respondeat superior* and summary judgment in favor of Lippa on Cooper's state law claims is inappropriate as well.

**CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment. Specifically, the Court GRANTS Summary Judgment in favor of Defendant Lipscomb and DENIES summary judgment in favor of Defendants Ellett and Lippa.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate order shall issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this __9th____ day of August 2013.